UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SHANNA M. VALE,

        Plaintiff,

     -against-

GREAT NECK WATER POLLUTION
CONTROL DISTRICT,

        Defendant.

--------------------------------------------------------X

**DECISION AND ORDER**
14-cv-4229 (ADS)(SIL)

**APPEARANCES:**

**Law Offices of Joshua Parkhurst**
*Attorneys for the Plaintiff*
11 Broadway
Suite 615
New York, NY 10004
     By: Joshua Samuel Carlo Parkhurst, Esq., of Counsel

**The Law Offices of Jacob Aronauer**
*Attorneys for the Plaintiff*
225 Broadway, Suite 307
New York, NY 10007
     By: Jacob Aronauer, Esq., Of Counsel

**Bee Ready Fishbein Hatter & Donovan LLP**
*Attorneys for the Defendant*
170 Old Country Road
Mineola, NY 11501
     By: Andrew K. Preston, Esq.
       Michael P. Siravo, Esq., Of Counsel

**SPATT, District Judge**.

    On July 9, 2014, the Plaintiff Shanna M. Vale (the "Plaintiff") commenced this action

against her former employer, the Defendant Great Neck Water Pollution Control District (the

1

"Defendant") for alleged violations of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA").

On August 8, 2014, the Defendant moved, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted.

For the reasons set forth, the Court denies the Defendant's motion to dismiss the complaint.

## I.  BACKGROUND

Unless stated otherwise, the following facts are drawn from the complaint and construed in a light most favorable to the non-moving party, the Plaintiff.

In late 2003, the Plaintiff interviewed for the civil service exempt position of Secretary to the Board of Commissioners of the Defendant.  As part of the application process, the Plaintiff was advised that, if hired, she would report to, and take direction from, only the Board members. The Plaintiff was hired for that position.

On January 12, 2004, the Plaintiff began her employment with the Defendant.  The duties of the Plaintiff's civil service exempt title included administrative and confidential work for the Board of the Defendant; communications with the Defendant's consultants, suppliers, contractors, taxpayers and regulatory personnel; and general day-to-day office administration and to act as a liaison on behalf of the Board.  In addition, the Plaintiff acted as a Health Benefits Administrator and processed enrollments, changes in status and terminations.  She also oversaw the annual election process for the position of Commissioner.

The Plaintiff's position was exempt from civil service law, and it did not include clerical work such as typing and dictation.  However, the Plaintiff would type correspondence for the

Board, take minutes at the weekly Board meetings, and maintain the Board's confidential files. According to the Plaintiff, her performance was frequently complimented by the Board members and, due to her strong work performance, she received yearly salary increases.  From 2004 through May 2010, the Plaintiff was not subject to any formal discipline by the Defendant and never received a performance evaluation.

On or about May 1, 2010, the Plaintiff, who is right handed, broke her right wrist outside of work.  As a result, the Plaintiff was unable to work for approximately one week.  She was also required to wear some type of brace on her right wrist for approximately one year.

The Plaintiff alleges that, as a result of this injury, it took her significantly more time to bathe and dress in the morning, and increased the amount of time it took her to prepare to leave for work.  The Plaintiff's driving ability was compromised as well and it took her much more time to reach her destination.  Routine household chores, such as laundry, allegedly became much more difficult for the Plaintiff because she could not lift or pull without great difficulty.

On or about May 4, 2010, the Plaintiff provided the Defendant with a medical note from Orlin & Cohen Associates LLP, the medical group that treated the Plaintiff for her broken wrist. The medical note stated that the Plaintiff could return to work on May 10, 2010 for "light duty" and that she should "refrain lifting until further notice." (Compl., at ¶ 37.)  When the Plaintiff returned to work after her injury, "she noticed that her papers were disrupted, personal items were missing and the lock to her desk draw had been broken." (Id. at ¶ 38.)  The Plaintiff, on information and belief, accuses Christopher Murphy ("Murphy"), the Superintendent, and Thomas Leake ("Leake"), the Business Manager, of causing or directing others to cause this disruption.

On or about May 18, 2010, less than 10 days after the Plaintiff returned to work, Murphy allegedly altered the Plaintiff's job duties, assigning her labor-intensive tasks that she claims only aggravated her medical condition.  For instance, the Plaintiff was assigned to pull files, sometimes voluminous and heavy, and carry boxes.  These job duties were apparently previously performed by Ann Marie Martinez, who held a clerical civil service title.  The Plaintiff was also allegedly assigned certain cleaning and janitorial duties.  The Plaintiff further alleges that she was now required to report to Murphy and Leake.

In November 2010, the Plaintiff reported to Commissioner Deena Lesser ("Lesser") that the Defendant had changed her job duties following her return from her broken wrist.

That month, Murphy and Leake instituted disciplinary charges against the Plaintiff, allegedly in retaliation for the Plaintiff's report to Lesser.  The disciplinary charges were purportedly based on the Plaintiff's alleged lateness.

Of relevance here, from January 12, 2004 until April 2, 2010, the Plaintiff's hours, as per the Board's direction, were 8:30 a.m. to 4:30 p.m.  In early April 2010, Murphy changed the Plaintiff's assigned hours to 8:00 a.m. to 4 p.m.  When the Plaintiff returned to work from her injury in May 2010, she told Murphy that it would be difficult for her to be at work at 8:00 a.m. due to her injury.  However, Murphy insisted that the Plaintiff arrive at work at 8:00 a.m.

From May 2010 until November 8, 2010, the Defendant never mentioned issues regarding attendance to the Plaintiff.  Yet, on November 9, 2010, the Plaintiff received a written reprimand stating that the Plaintiff had been late to work 49 times, although none of the alleged dates and times were provided.  The Plaintiff reviewed and signed an acknowledgment that she received the written reprimand.  The Plaintiff expressed her position that any lateness was due to

her injury.  The Plaintiff again allegedly requested, as a reasonable accommodation, the opportunity to arrive to work at 8:30 a.m.  This request was denied.

Following the issuance of the written reprimand, the Plaintiff was allegedly never late for work except in instances of extremely poor weather conditions.

On October 1, 2011, the Defendant sent the Plaintiff a letter requesting that she provide updated information from her health care providers.  On October 11, 2011, the Plaintiff's physician provided a note requesting that the Plaintiff be given a support cushion for her chair and not be required to lift more than five pounds or engage in any pulling.

The Plaintiff alleges that, in an attempt to force her to resign in retaliation for her complaint to Lesser, various supervisors began to harass her at work.  For example, the Plaintiff claims that although she previously enjoyed her own windowed office, after suffering her injury, the Plaintiff was required to share a smaller workspace with another employee.  The Plaintiff also claims that, unlike her colleagues, she was no longer permitted to keep notes and "post-its" on her work desks.  She also alleges that Murphy and Leake took documents that the Plaintiff had marked as "Draft" and had not yet presented to her supervisors and falsely presented them as the Plaintiff's final work product.

In January 2013, the Defendant terminated the Plaintiff's employment.  The Plaintiff alleges that the decision to terminate her employment came at the behest of Murphy and Leake rather than the Commissioners of the Board.  The Plaintiff alleges, on information and belief, that her replacement was assigned to perform administrative and confidential work for the Board and acted as a liaison on behalf of the Board for communications with consultants, suppliers, and contractors.

After the Plaintiff was terminated, she learned, allegedly for the first time, of a written reprimand against her dated January 26, 2011 pertaining to alleged lateness.  The Plaintiff never signed an acknowledgment that she had received the January 26, 2011 written reprimand.  As with the November 9, 2010 written reprimand, the January 26, 2011 written reprimand failed to contain the dates that the Plaintiff was allegedly late.  The Plaintiff claims that none of her colleagues, despite their own lateness, were ever subject to such discipline.

On September 4, 2013, the Plaintiff filed a complaint with the New York State Division of Human Rights (the "NYSDHR") charging the Defendant with unlawful discrimination on the basis of age and disability.  On February 27, 2014, the NYSDHR issued a decision dismissing the Plaintiff's complaint.

On April 11, 2014, the United States Equal Employment Opportunity Commission ("EEOC") adopted the findings of the NYSDHR and issued a "Right to Sue" letter to the Plaintiff.

This action ensued.

## II.  DISCUSSION

A.  The Legal Standard on a Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund. Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In other words, the complaint must allege "enough facts to state a claim to relief

that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct.

1937, 173 L. Ed. 2d 868 (2009). The Court accepts as true all well-pleaded factual allegations

and draws all reasonable inferences in plaintiff's favor, but does not credit "mere conclusory

statements" or "[t]hreadbare recitals of the elements of a cause of action." <u>Id</u>.

Furthermore, "[i]n adjudicating [a Rule 12(b)(6) motion, [courts] may take judicial

notice of documents in the public record, which includes records and reports of administrative

bodies, i.e., the NYSDHR." <u>Volpe v. Nassau County</u>, 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013);

<u>see also</u> <u>Morris v. David Lerner Associates</u>, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010)("[W]ith

respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the court

may consider such documents because they are public documents filed in state administrative

proceedings, as well as because they are integral to the plaintiff's claims."). "Thus, the Court

takes judicial notice of the decision of the NYSDHR on plaintiff's discrimination complaint to

establish the fact of such litigation and its outcome; not for the truth of the matters asserted

therein." <u>Colvin v. State Univ. Coll. at Farmingdale</u>, No. 13-CV-3595 (SJF)(ARL), 2014 WL

2863224, at *16 (E.D.N.Y. June 19, 2014)(citing <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767,

774 (2d Cir. 1991)).

B.  <u>The Disability Discrimination Claim under the ADA</u>

The ADA provides that "[n]o covered entity shall discriminate against a qualified

individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines

discrimination on the basis of disability as, among other things, "limiting, segregating, or classifying a[n] . . . employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such . . . employee." 42 U.S.C. § 12112.

To make out a *prima facie* case of disability discrimination, a plaintiff must show that (1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of her disability. Morris v. Town of Islip, No. 12–CV–2984 (JFB)(SIL), 2014 WL 4700227, at *8 (E.D.N.Y. Sept. 22, 2014); see Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003)(citing Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869–70 (2d Cir. 1998)).

Here, the Defendant does not argue that it is not subject to the ADA or that it is not liable for the wrongful acts of its agents when acting within the scope of their authority. Neither does the Defendant argue that the Plaintiff did not suffer an "adverse employment action" in the form of termination of her employment. Rather, the Defendant contends that the Plaintiff did not suffer any additional adverse employment actions; that she did not suffer from a "disability," actual or perceived by them, as defined by the ADA; or that she was terminated as a result of any such "disability."

A plaintiff suffers an "adverse employment action" under the ADA when "he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)(quoting Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir.1999)). A materially adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job

8

responsibilities." <u>Galabya</u>, 202 F.3d at 640 (quoting <u>Crady v. Liberty Nat'l Bank & Trust Co. of Ind.</u>, 993 F.2d 132, 136 (7th Cir. 1993))(internal quotation marks omitted).  "Examples of materially adverse employment actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities. . . .'" <u>Feingold v. New York</u>, 366 F.3d 138, 152 (2d Cir. 2004)(quoting <u>Galabya</u>, 202 F.3d at 640).

In this case, the Plaintiff first contends that, in addition to her termination of employment, she suffered an "adverse employment action" in the form of the modification of her job duties, namely, the shift to certain labor-intensive tasks.

"Where assignments fall within the duties of a plaintiff's position, receiving unfavorable . . . work assignments does not rise to the level of an adverse employment action." <u>Williams v. New York City Housing Authority.</u>, No. 03 Civ. 7764 (WHP), 2008 WL 2695139, at *3 (S.D.N.Y. June 29, 2008), <u>aff'd</u>, 361 Fed. Appx. 220 (2d Cir. Jan. 19, 2010); <u>see also</u> <u>Billingslea v. Ford Motor Co., Inc.</u>, No. 06–cv–0556 (WMS), 2010 WL 4861500, at *7 (W.D.N.Y. Nov .30, 2010)("A plaintiff's assigned task, however undesirable it may be, does not constitute an adverse employment action under Title VII if it falls within his or her job responsibilities."); <u>Aspilaire v. Wyeth Pharmaceuticals, Inc.</u>, 612 F. Supp. 2d 289, 305 (S.D.N.Y. 2009)(holding that assignments to tasks within the scope of an employee's job do not constitute adverse employment actions since such assignments are "consistent with the terms and conditions of [the] plaintiff's employment.")

Here, however, construing the complaint in a light most favorable to the Plaintiff, the Court finds that she has, in fact, adequately alleged that she was assigned certain tasks outside of the scope of her job duties. <u>Cf.</u> <u>Grant v. New York State Office for People with Developmental</u>

Disabilities, No. 12-CV-4729 (SF), 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013)("plaintiff does not allege that any of the work assignments to which he was assigned exceeded the scope of his job duties.").

The Defendant points to the "CS-4" classification form outlining the job duties of the Plaintiff's civil service exempt secretarial position. However, even if the Court could properly consider this document – which is not attached to or referenced in the complaint – on this motion to dismiss, the Court would find this argument unavailing. The cited contents of this form do not reveal any responsibility for labor intensive tasks on the part of the holder of this position. Whether the tasks the Plaintiff was assigned did, in fact, constitute a "material" change in her working conditions for the worse cannot be decided at this stage of the litigation.

To the extent the Plaintiff alleges that, following her return from work, she suffered from harassing behavior in that "her papers were disrupted, personal items were missing, and the lock to her desk draw [sic] had been broken." (Compl., at ¶39), the Court finds that these allegations , even if true, do not rise to the level of an "adverse employment action" as required to state a claim under the ADA. Indeed, "[n]ot everything that makes an employee unhappy is an actionable adverse action." Phillips v. Bowen, 278 F.3d 103, 117 (2d Cir. 2002)(citation and quotations marks omitted).

Similarly, the Court finds that certain of the other allegations of harassing behavior, namely the denial of "post-its" and the office change, taken separately, could not constitute an "adverse employment action" for purposes of a disability discrimination claim. Benedith v. Malverne Union Free Sch. Dist., No. 11-CV-5964 (ADS)(GRB), 2014 WL 4056554, at *41 (E.D.N.Y. Aug. 15, 2014)(on summary judgment, finding that certain "alleged instances of discrimination, including . . . the deprival of the use of certain teaching tools and technologies [to

a teacher did] not constitute "adverse employment actions" for purposes of anti-discrimination lawsuits."); Krinsky v. Abrams, No. 01CV5052 (SLT)(LB), 2007 WL 1541369, at *7 (E.D.N.Y. May 25, 2007)("Plaintiff contends that Defendants limited Plaintiff's access to necessary materials, denied him access to the bookroom, denied Plaintiff's request to attend seminars, denied Plaintiff certain coordinator positions, and gave him unsatisfactory marks on his lesson reviews.  He also claims he was required to undergo a psychological evaluation.  None of these qualify as 'adverse employment actions.'"), aff'd, 305 F. App'x 784 (2d Cir. 2009).

This is not to say that the deprivation of certain work related tools or materials could never constitute an "adverse employment action" for purposes of an employment discrimination claim.   Rather, the Court is of the view that, under these circumstances, the allegations regarding the "post-its" and the office shift, even if true, do not rise above a level of "mere inconvenience." Norris v. New York City Hous. Auth., No. 02-6933 (RJH), 2004 WL 1087600, at *17 (S.D.N.Y. May 14, 2004)(withholding office equipment is not an adverse change, but rather a mere inconvenience).

However, the Court reaches a different conclusion with respect to the Plaintiff's allegation that Murphy and Leake took documents that the Plaintiff had marked as "Draft" and had not yet presented to her supervisors and falsely presented them as the Plaintiff's final work product.  Construed liberally, the Plaintiff essentially alleges that her supervisors attempted to, for lack of better word, "sabotage" her work.  If true, this could be considered a "material" change in an employee's working conditions.

On the other hand, the Court finds that the disciplinary charges and written reprimands issued against the Plaintiff do not, even if true, constitute an "adverse employment action" because none resulted in a loss of pay, suspension, or material change in the terms of the

11

Plaintiff's employment.  Indeed, the Second Circuit has instructed that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006).  Here, notably, the complaint does not set forth any allegation that the disciplinary charges and written reprimands were conducted in an unreasonable manner, although not necessarily meritorious.

In sum, the Court finds that the Plaintiff adequately pleads "adverse employment actions" in the form of her termination of employment; the modification of her job duties; and the practice of her supervisors in improperly marking her drafts as "final."  The Court declines to find that the Defendant's alleged refusal to accommodate the Plaintiff in terms of working hours may constitute an "adverse employment action" for purposes of the Plaintiff's traditional disability discrimination claim under the ADA.  Rather, this claim is more appropriately viewed as a separate claim under the ADA for failure to accommodate, discussed later.

The Court next turns to the Defendant's argument that the Plaintiff did not suffer from a "disability" as defined by the ADA.  The ADA provides that "[t]he term 'disability' means, with respect to an individual-(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  The ADA was amended in 2008 to clarify and expand the interpretation of "major life activity" to include "'caring for oneself, performing manual tasks . . . walking, standing, lifting, bending, speaking, breathing . . . and working,' as well as 'the operation of a major bodily function,' including 'neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.'" Hutchinson v. Ecolab, Inc., 09

12

Civ. 1848 (JBA), 2011 WL 4542957, at *8 (D. Conn. Sept. 28, 2011)(quoting Pub. L. No. 110–325, 122 Stat. 3553, 3555 (2008)).

Here, the Plaintiff relies on subsection A of 42 U.S.C. § 12102(1) and argues that she suffered a physical impairment that substantially limited one or more of her major life activities. In this case, the Plaintiff has alleged that, as a result of the injury, it took her more time to bathe; dress in the morning; and perform routine household chores. (Compl. at ¶35.)

To be sure, "[c]ourts within this circuit, and the vast majority of courts elsewhere, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the act." Fouad v. Jeport Hotel Corp., 01 Civ. 8502 (GBD), 2005 WL 1866329, at *2 (S.D.N.Y. Aug. 5, 2005)(citations omitted); see e.g. Zick v. Waterfront Comm'n of New York Harbor, No. 11 CIV. 5093 (CM), 2012 WL 4785703, at *5 (S.D.N.Y. Oct. 4, 2012)(dismissing ADA claim on Rule 12(b)(6) motion on the basis that the Plaintiff's injury, a broken leg, did not constitute a "disability" where the plaintiff "failed to allege that her injury was more than temporary, or that complications arose from her injury."); Guary v. Upstate Nat. Bank, 618 F. Supp. 2d 272, 275 (W.D.N.Y. 2009)(ruling on a Rule 12(b)(6) motion, "plaintiff's broken ankle, which resulted in a single, twelve-week disability leave with no alleged physical limitations thereafter, is not a disability for purposes of the ADA.").

Here, by contrast, the Plaintiff alleges that she was required to wear a brace on her wrist for approximately one year. (Compl., at ¶ 34.)  Based on this allegation, the Court concludes that it is premature to find, as a matter of law, that the Plaintiff's impairment was "temporary" and therefore not protected by the ADA.

13

The Court next considers the final disputed element of the Plaintiff's claim of disability

discrimination in violation of the ADA: causation.  "Following the Supreme Court's decisions in

University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517[, 186 L. Ed. 2d

503] (2013), and Gross v. FBL Financial Services, Inc., [557 U.S. 167,] 129 S. Ct. 2343[, 174 L.

Ed. 2d 119] (2009), it is an open question in this Circuit whether an ADA plaintiff must now

show that disability discrimination (or the plaintiff's protected activity, in a retaliation claim)

was a but-for cause of the adverse employment action." Krachenfels v. N. Shore Long Island

Jewish Health Sys., No. 13-CV-243 (JFB)(WDW), 2014 WL 3867560, at *14 n. 12 (E.D.N.Y.

July 29, 2014).

Regardless of the proper standard of causation under the ADA, the Court finds that the

Plaintiff has alleged sufficient facts from which a factfinder could infer that the Defendant

modified her job duties; her supervisors "sabotaged" her work; and the Defendant terminated her

employment on the basis of her "disability."  Indeed, the Plaintiff alleges that just days after

returning to work following the injury, the Defendant modified her job responsibilities, requiring

her to perform certain labor intensive tasks outside the scope of her job classification.

"As other courts within the Second Circuit have held, temporal proximity is sufficient to

raise an inference of discrimination to plausibly state a claim of employment discrimination."

Shlafer v. Wackenhut Corp., 837 F. Supp. 2d 20, 27 (D. Conn. 2011); see Hill v. Dale

Electronics Corp., No. 03 Civ. 5907 (MBM), 2004 WL 2937832, at *3 (S.D.N.Y. Dec. 19, 2004)

(denying a motion to dismiss plaintiff's claim of employment discrimination on the basis of

temporal proximity creating an inference of discrimination where plaintiff announced that she

was pregnant in early September and was terminated in late September); see also Pellegrino v.

County of Orange, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004)(holding that the temporal

14

proximity between plaintiff's announcement of her pregnancy and the process of her termination was sufficient to establish a *prima facie* case of employment discrimination).  "The Court finds these cases persuasive as they are consistent with the standard for employment discrimination claims at the pleading stage as articulated by the Second Circuit recently in Perry[v. NYSARC, Inc., 424 Fed. Appx. 23, 25 (2d Cir. 2011)], instructing that courts should consider only whether the complaint includes factual allegations sufficient to 'raise a right to relief above the speculative level.'" 424 Fed. Appx. at 25 (citing Twombly, 550 U.S. at 555, 127 S. Ct. 1955).

The Defendant counters that any inference of discrimination is defeated as a matter of law by the fact that it continued to employ the Plaintiff for more than two and half years after she initially made this request.  While this undisputed fact may weigh against a finding of discrimination directly linked to the termination of the Plaintiff's employment, the factual allegations must be viewed in the totality rather than in a vacuum.  Indeed, the Court finds that the Plaintiff has set forth sufficient facts to infer that, almost immediately following her return from her injury, the Plaintiff was assigned certain tasks outside the scope of her job classification that the Defendant knew she would have difficulty performing and that this change set in motion the events that led to the Plaintiff's termination.  The Court further finds that the fact that the Plaintiff may not have been "disabled" at the time of her termination does not, without more, defeat the disability discrimination claim, particularly on a motion to dismiss.  In short, the Court finds that the Plaintiff has adequately plead the requisite causal connection between her "disability" and the above-mentioned "adverse employment actions."

Having concluded that the Plaintiff has adequately plead a *prima facie* case of discrimination in violation of the ADA – based on "adverse employment actions" in the form of the modification of her job duties; the practice of her supervisors improperly marking her drafts

15

as "final"; and the termination of employment – the Court denies that part of the Defendant's motion to dismiss this claim.

C.   The Reasonable Accommodation Claim under the ADA

To make out a *prima facie* case where a plaintiff's claim rests on an alleged failure to reasonably accommodate a disability, the plaintiff must show the following:(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006)(quotation marks omitted); see also Seivright v. Montefiore Med. Ctr., Hosp. of Albert Einstein Coll. of Med., No. 11 CIV. 8934 (AJN), 2014 WL 896744, at *6 (S.D.N.Y. Mar. 3, 2014)(reciting elements).  "At the motion to dismiss stage, the [Defendant] bears the weighty burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable accommodation falls completely in its favor." Goonan v. Federal Reserve Bank of New York, 916 F. Supp. 2d 470, 482 (S.D.N.Y. 2013).

Here, the Court has previously concluded that the Plaintiff has adequately alleged a "disability" within the meaning of the ADA.  The Court further finds that the Plaintiff has sufficiently alleged (1) notice on the part of the Defendant, citing the medical notice in which her physician requested that the Defendant assign the Plaintiff only "light duty" and not be required to carry certain objects or engage in heavy lifting; (2) that she requested that she be permitted to arrive at work at 8:30 a.m. and that the Defendant refused; and (3) that she could perform the essential functions of her secretarial position with an accommodation in start time.

Although the Plaintiff's physician did not specifically request that the Plaintiff be allowed to arrive at work at 8:30 a.m., a physician's imprimatur is not necessary for an accommodation request to be "reasonable."  Whether an accommodation is "reasonable" is more appropriately determined on summary judgment or by the factfinder at trial.

Relatedly, even if, as the Defendant contends, the Plaintiff's job classification delineated 8:00 a.m. as the start time for that position, it does not follow that the Plaintiff cannot mount a viable claim based on a failure to reasonably accommodation where, as here, it is plausibly alleged that the Defendant acquiesced in the Plaintiff's prior practice of coming into work at 8:30 a.m.  The Defendant further contends that it changed the Plaintiff's work schedule prior to her injury.  However, on a motion to dismiss, the Court cannot resolve factual disputes.

For these reasons, the Court denies that part of the Defendant's motion to dismiss the Plaintiff's "reasonable accommodation" claim under the ADA.

D.  The Retaliation Claim Under the ADA

The ADA also prohibits retaliation against an individual who has "opposed any act or practice made unlawful under the ADA." 42 U.S.C. § 12203.  To establish a *prima facie* case of retaliation, a plaintiff must show that "(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); see also Sobhi v. Sociedad Textil Lonia Corp., No. 13 CIV. 8073 (AT)(MHD), 2014 WL 7474338, at *6 (S.D.N.Y. Dec. 30, 2014)(quoting Treglia).

With respect to protected activity, "[a] complaint can be informal — an employee does not need to lodge a formal complaint of discrimination." Bowen–Hooks v. City of New York,

No. 10–CV–5947 (MKB), 2014 WL 1330941 (E.D.N.Y. Mar. 31, 2014)(analyzing Title VII); Gorbea v. Verizon N.Y., Inc., No. 11–CV–3758 (KAM)(LB), 2014 WL 917198, at *11 (E.D.N.Y. Mar. 10, 2014)("Requests for disability accommodation and complaints, whether formal or informal, about working conditions related to one's alleged disability are protected activities.").

In this case, the Plaintiff adequately alleges that she engaged in protected activity when, six months after returning from her medical leave following her broken wrist, she reported to Commissioner Lesser that her duties had changed for the worse. Considering that the Court declined to dismiss the Plaintiff's traditional claim of discrimination under the ADA, the Defendant cannot insulate itself from liability for the retaliation claim on the basis that the Defendant's conduct did not, in fact, violate the ADA.

In any event, "[a] plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable believe that the underlying challenged actions of the employer violated the law." Treglia, 313 F.3d at 719 (internal quotation marks, alteration, and citation omitted); Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10, 16 (2d Cir. 2013)("'[M]ere subjective good faith belief is insufficient; the belief must be reasonable and characterized by objective good faith.'")(alterations and emphasis omitted)(citing Sullivan— Weaver v. New York Power Auth., 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000)). Further, contrary to the Defendant's contention, logic dictates that whether the Plaintiff's belief that the Defendant had violated the ADA was a "good faith" belief does not depend on to whom she reported her complaint, her supervisors or the Board of Directors.

The Court also finds that the Plaintiff has adequately alleged protected activity in the form of her request, in May 2010, for accommodation in terms of starting hours. Indeed, "[m]aking requests for reasonable accommodations for a disability is protected activity within the contemplation of the statute." Lyman v. New York & Presbyterian Hosp., No. 11 CIV. 3889 (KPF), 2014 WL 3417394, at *21 (S.D.N.Y. July 14, 2014).

The Court next considers the alleged "adverse employment actions" supporting the Plaintiff's retaliation claim under the ADA. Unlike the requirements for a standard disability-based discrimination claim, a plaintiff pursuing a retaliation claim need not allege that he or she was actually "disabled" within the meaning of the ADA. Stephan v. W. Irondequoit Cent. Sch. Dist., 769 F. Supp. 2d 104, 108 (W.D.N.Y. 2011) aff'd sub nom. Stephan v. W. Irondequoit Cent. Sch. Dist., 450 F. App'x 77 (2d Cir. 2011).   "In other words, prevailing on the disability discrimination claim under the ADA is not a prerequisite to prevailing on a retaliation claim under the ADA." Sherman v. Cnty. of Suffolk, No. 11-CV-2528 (ADS)(SIL), 2014 WL 7370033, at *17 (E.D.N.Y. Dec. 29, 2014).

In addition, "[u]nlike claims of discrimination, which limit what qualifies as an 'adverse employment action' to changes in the terms and conditions of employment, adverse employment actions in the context of a claim of retaliation are much broader." Jeffries v. Verizon, No. CV 10–2686(JFB)(AKT), 2012 WL 4344197, at *18 (E.D.N.Y. Aug. 31, 2012) report and recommendation adopted, No. 10–CV–2686 (JFB)(AKT), 2012 WL 4344188 (E.D.N.Y. Sept. 21, 2012); see Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed 2d 345 (2006)("The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."); Solomon v. Southampton Union Free Sch. Dist., No. 08–CV–4822 (SJF)(ARL), 2011 WL 3877078, at *10 (E.D.N.Y. Sept. 1, 2011)

(concluding that the Supreme Court in <u>White</u> not only expanded the meaning of an adverse employment action in Title VII retaliation claims, but also in ADA retaliation claims, as the same standard applies in both).

The applicable test in the retaliation context is that a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>White</u>, 548 U.S. at 68 (internal quotation marks omitted).

In this case, the Court previously concluded that the Plaintiff alleged sufficient facts under the more demanding standard for traditional claims of disability discrimination to support certain "adverse employment actions."  Therefore, it follows that these actions could qualify as "adverse employment actions" under the more lenient standard for retaliation claims under the ADA.  However, the Court declines to find that any other instances of adverse actions, including the alleged "harassment" suffered by the Plaintiff and the disciplinary actions taken against her, could qualify as an "adverse employment action" for a retaliation claim.  This is because, in the Court's view, the Plaintiff has not plausibly alleged that this conduct would have dissuaded a reasonable working from making or supporting a charge of discrimination.

With regard to causation, "[t]he Supreme Court's recent decisions in Gross and Nassar may implicate the causation necessary to prevail on an ADA retaliation claim." <u>Tse v. New York Univ.</u>, No. 10 CIV. 7207 (DAB), 2013 WL 5288848, at *18 (S.D.N.Y. Sept. 19, 2013).  "As with traditional ADA discrimination claims, the Second Circuit has not yet articulated what standard now applies for ADA retaliation claims in light of <u>Gross</u> and <u>Nassar</u>." <u>Sherman</u>, 2014 WL 7370033, at *18.  In any event, the Court finds that, based on these allegations, the proper level of causation for a retaliation claim under the ADA is not dispositive on this motion to dismiss.

Indeed, whether discriminatory animus need be the "motivating factor" or "but for" cause of the "adverse employment action," the Court finds that the Plaintiff has adequately alleged that the above-mentioned "adverse employment actions" – namely, the modification in job responsibilities; the practice of her supervisors improperly marking her drafts as "final"; and the termination of her employment – constituted retaliation for her making a "reasonable accommodation" request.  In particular, the Court notes that the modification in job responsibilities allegedly occurred close in time to the accommodation request, soon after the Plaintiff's returned to work in May 2010.  Although the complaint is devoid of any plausible allegation of overt discriminatory animus against the Plaintiff on the basis of her "disability," "[c]lose temporal proximity between [a] plaintiff['s] protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010).

Here, the Plaintiff's allegations regarding the proximity in time between the protected action and one of the "adverse employment actions" – the modification in job responsibilities – provide a basis by which "a jury could plausibly . . . infer a causal connection." Dimitracopoulos v. City of N.Y., No. 14–CV–674 (JBW), 2014 WL 2547586, at *13 (E.D.N.Y. June 4, 2014)(internal quotation marks); see also Satina v. New York City Human Res. Admin., No. 14 CIV. 3152 (PAC), 2014 WL 5353697, at *4 (S.D.N.Y. Oct. 21, 2014).

The Court finds that the Plaintiff has adequately alleged that the other potential "adverse employment actions" – the practice of her supervisors improperly marking her drafts as "final" and the termination of her employment – also constituted unlawful retaliation for her making a "reasonable accommodation" request.

It is true that the supervisor "sabotage" allegedly began only after the Plaintiff complained to Lesser in November 2010.  It is also true that the Defendant continued to employ the Plaintiff for more than two and half years after she initially made the "reasonable accommodation" request.

Where, as here, a plaintiff relies exclusively on timing to plead causation, the temporal proximity between the protective activity and adverse employment action must be "very close." See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001).  There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009)(internal quotation marks omitted).  However, "courts in this Circuit have often found that a temporal gap of approximately three months between the protected activity and the adverse action, without more, prohibits an inference of causation." Nadel v. Shinseki, No. 12-CV-1902 (VSB), 2014 WL 5343331, at *8 (S.D.N.Y. Sept. 30, 2014); see Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85–86 (2d Cir. 1990)(finding three month gap, without other evidence, insufficient to show causation); McManamon v. Shinseki, No. 11–CV–7610 (PAE), 2013 WL 3466863, at *13 (S.D.N.Y. July 10, 2013)(finding three and a half months insufficient to show causation); Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007)(holding that a passage of more than two months insufficient to show causation)(collecting cases).

However, the Court "may overlook a longer gap in time between protected conduct and an adverse employment action where 'the pattern of retaliatory conduct begins soon after the filing of the [] complaint and only culminates later in actual discharge. Billue v. Praxair, Inc.,

22

No. CIV.A305CV00170 (JCH), 2007 WL 1231841, at *8 (D. Conn. Apr. 26, 2007)(citations omitted) aff'd, No. 07-2359-CV, 2008 WL 4950991 (2d Cir. Nov. 20, 2008).

Accordingly, the Court denies the Defendant's motion to dismiss the Plaintiff's ADA retaliation claim based on her protected activity in requesting an allegedly reasonable accommodation.

The Court reaches a similar conclusion with respect to the relationship between the other instance of protected activity – namely, the complaint to Lesser in November 2010 – and the supervisor "sabotage" and the termination of employment.  Therefore, the Court denies the Defendant's motion to dismiss the Plaintiff's ADA retaliation claim based on that protected activity.

As a final matter, the Court notes that the Plaintiff cannot directly assert unlawful retaliation in the form of the modification of her job responsibilities for complaining to Lesser for the simple reason that it is undisputed that the modification in job responsibilities preceded the complaint to Lesser.  As the Second Circuit has noted, even on a Rule 12(b)(6) motion, a court "must omit from consideration those episodes of harassment that preceded [plaintiff's] protected activity," because "harassment could not have been in retaliation for [protected] acts not yet taken." Gregory v. Daly, 243 F.3d 687, 701 (2d Cir. 2001).  However, at this stage of the litigation, the Court declines to parse the various theories supporting the Plaintiff's ADA retaliation claim.

### III.    CONCLUSION

In sum, the Court denies the Defendant's motion to dismiss the complaint.  However, the Court notes that, for purposes of the Plaintiff's discrimination and retaliation claims under the ADA, the only discrete "adverse employment actions" she may rely on are the modification in

job responsibilities; the practice of her supervisors improperly marking her drafts as "final"; and

the termination of her employment.

**SO ORDERED.**
Dated: Central Islip, New York
January 20, 2015

_____*Arthur D. Spatt*_____
       ARTHUR D. SPATT
United States District Judge